David Duvick, accounted by Iwata Zinevich v. Plainfield Fire Protection District, Yad Veles, I see them to double. Zinevich? Zinevich. Zinevich? Zinevich. Zinevich. Thanks to my husband. I went from Damask to Zinevich. I didn't do too bad. May it please the court, counsel. My name is Iwata Zinevich. I am here on behalf of Dave Duvick in this case. And I'd like to first start out by saying that if I seem a little bit nervous, it is because I am. This is my first oral argument before the appellate court, so I'm a little bit terrified. You can pick a better appellate. Just a little bit. They're mean, but I'm not. Okay, then I'll look at you the whole time. So if I stutter a little bit or if I lose my place, please forgive me. I apologize. I have time. Now, we've given you a lot of information in our brief, so I'm not going to try to repeat everything in there. I'm just going to highlight a few things. Basically, what this case comes down to is did the defendant, Fire Protection District, which I'll just refer to as the district from here on out, have the legal authority to modify the final eligibility list for initial employment? And as you've seen by the briefs that have been admitted, we've tried to have this reviewed by administrative review and in certain other ways. And the lower courts basically said that there was no final decision by the administrative agency and didn't really get to the main issue, which is the question I just presented to you. But how can the court get to the main issue? I mean, we have procedure to take those ultimate issues that you want resolved properly before a court, jurisdictional requirements, et cetera, et cetera. And what is the court really reviewing, the substance of the action, or are they saying you just haven't got them before us in a proper way that we can recognize the dispute that you have with the appellees? Well, in this case, the court said we didn't have the proper, we didn't use the proper avenue. But in saying that there was no final decision, although I respect the court's decision, I disagree with it. I think that there was a final decision in this case. And in our briefs, we've given you a couple different cases. But the main thing I'd like you to look at is the actual administrative review law, which has a definition of what an administrative decision is. And an administrative decision is any decision which affects the privileges of one of the parties, which is what we have here. We have a decision. We don't necessarily have to have a hearing in a courtroom setting or a judge sitting to have an administrative decision. And we gave you a couple cases to back that up, to let you know. Like the key outdoor and the solar cases, for example, which are cited on page 19 and 20 of our initial brief. So a hearing is not necessarily necessary. So although, like I said, I respect the lower court's decision, I disagree. And this is why we believe that under administrative review, we should be allowed to proceed forward on the actual question at hand. And the privilege that we have here is our, is Dave Dubik's privilege and the right to pursue a trade and occupation of his choosing, which is to become a firefighter within the district. And if you look at the definition of the American College Dictionary, which we cite on page 22 of our initial brief, and a privilege, again, is an advantage or an opportunity, which is what we've got in this case. So that's how I believe that we should have been able to have this heard under administrative review at the very least. To move on to the actual question at hand, the district only has the powers that is granted to it through the statute by which it exists. The statute that we are looking at here is the Fire Protection District Act. And in that particular act, for them to be able to combine eligibility lists or modify or change, they would have to find that power in that act. Now, the district is arguing that under the Board of Fire and Police Commissioners Act, which is a separate act, that they have this power. But in order to grasp onto that Board of Fire and Police Commissioners Act, they would have to have that power within the Fire Protection District Act. And the section that they believe gives them the power is 16.01 of the Fire Protection District Act. But if you look at that particular section, it specifically says that if the two sections, the Board of Fire and Police Commissioners Act and the Fire Protection District Act, that's a mouthful, if they are inconsistent, you shouldn't be able to utilize both. And that's what we have here. We've got the Fire Protection District Act, which tells you the eligibility list is valid for two years. Then you've got the Board of Fire and Police Commissioners Act, which can be interpreted into saying that you can modify it. We're not going to look at the time as to when the people took the testing. Well, does it say the list is valid for two years, or does it say names will be stricken off the list after two years? Well, if you look at the entire section in that particular act, it says names, but it also utilizes words like list, and it only has one singular, not plural, which would give us the impression that they are thinking of two or three lists. Well, why would you strike a name off a list that expired on its own? Why would you worry about striking names if the listing went poof magically at the end of two years? Well, I think what the legislature meant is that you strike them off from the beginning, from top to bottom, that as you have a position that opens up, you're going to take the next name in line, and that's what they meant by striking it off. But the actual list is the one that expires in two years, so it is valid for two years. And after the two years, if you still have names that are left on the list, you can strike those off, and you start from the beginning. You start from scratch. Did I answer your question? I hope so. So that's the number one thing, is that the two acts are inconsistent, so you should not be able to utilize them. Secondary to that is if you don't believe they're inconsistent, you think you can match them and utilize together, 16.01, which is what the district is relying upon in order to grasp onto the Board of Fire and Police Commissioners Act, also says that the Board of Fire and Police Commissioners Act shall apply to the extent that it may be made applicable. And the way that we interpret that is that you actually have to have a rule within the district that says we're going to grasp onto the Board of Fire and Police Commissioners Act. And the other section of the Fire Protection District Act that bolsters that is 16.05 entitled Rules Making and Distribution. And that specifically says that this district shall make rules to carry out the purposes of sections 16.01 through 16.18. 16.01 is the section that may give them the ability to grasp onto the Board of Fire and Police Commissioners Act. So based on that, we believe that they should have had a rule in place to do this. But if you look at their rules, secondarily to this argument, if you look at the district's rules themselves, section 3.08 of their rules entitled Initial Eligibility List talks about the initial list in order for you to become a firefighter. And it says this list is subject to change. It specifically gives them that power to change the initial eligibility list. Now section 3.09, which talks about the final eligibility list, doesn't have those words. What it says is this list shall remain for two years. That's what it says. Section 4.01 of the district's rules, Filling of Vacancies, says that all vacancies shall be made from the final eligibility list. What findings did the trial court make on all of these arguments you presented to us? The trial court never got to this point. And what did we reveal? Well, I think from looking at the record, looking at all of our briefs, I think what yours should do is basically reverse the lower court in saying that they should have gotten to these arguments. Because under administrative review, they shouldn't have tossed it out before we got to this point. Does that answer your question? Not really, because you're really presenting those arguments. If the trial court had gone and ruled in your favor not to dismiss your complaint, then all of this material the trial court would have been reviewing, issuing a decision on, and we'd have something to review. Okay. I mean, are we de novo reviewing here? I believe you are, yes. Under what authority are we doing that? We've addressed that in our reply brief. I don't have the specific page. I do apologize. But I believe we cited a couple of cases that you should review de novo. But at the very least, we ask that you review what de novo as an appellate court. I think the entire – I apologize. I must not be answering clearly. The entire situation should have – the trial court should have gone through and said administrative review is the proper vehicle for us to review this. And even though they haven't, you should reverse that, because their position, unfortunately, was incorrect. So what you need to do, it seems to me, in a simplistic fashion, is to tell us why the trial court is wrong in dismissing your complaint. Okay. Not why you are right in the substance of your complaint, when I think basically we don't have a trial court finding on whether you were right or wrong on these underlying substantive issues. Okay. Then I will go back to the initial brief, and there's a portion of it where we talk about why there was a final decision. We believe that the administrative agency here, the district, did have a final decision when it decided to post the second final eligibility list. After already posting the first final eligibility list, that was a decision of the administrative agency, which affected our client, Dave Dubik, his privileges. And thus, we should be able to have this reviewed under administrative review. So at the very least, we ask that you remand it back so that the court can actually get to the question at hand, whether or not they had the power to combine the two eligibility lists. I'm not sure if this question is relevant, but it might be. Do you know, is it in the record, whether or not they ever got to the point on the list where your client would have been hired had the list not been changed? I know that the vacancies have been filled, but I'm not certain as to what the numbers are. I don't believe that's in the record. So we don't know for the record whether your client's ever been denied a job? Honestly, I'm not certain. I do apologize. But I think if we review this and we say, if the court finds that he should have remained on the first eligibility list, then we can go through and have him go through the rest of the process. I believe that they did go through all of the names, that enough vacancies have been filled to go through and get to his name. Well, I will not waste your time, then, with my other arguments. I will reserve the rest of my time unless you have some other questions. Thank you. Thank you. Mr. Denolfo, is it? Yes. You may respond. May it please the Court? Counsel, my name is Steve Denolfo, and I represent the defendant at Lease in this matter. Your Honor correctly pointed out that the court never did get to the substantive nature of the district's act of combining, retesting, and adding names to the list. What I think is proper before this court today is whether the court's dismissal of plaintiff's numerous complaints. When I say numerous, there was a number, if you look at the procedural history of this case, a number of motions granted dismissing the complaint. And each time, new theories of law would be fashioned in an effort to try to get this matter before the court, all of which on a procedural nature were dismissed, ultimately leading to now us being here today for our argument. It is our position that the court, by not getting to the substantive matter of whether the conduct of the district was appropriate, it is therefore not properly before you today. So what I would like to do is focus on the dismissals by the court. Briefly saying to the court, if we did get to the substantive matter, I believe the law supports what they did. But we haven't gotten to that point. There's no record before you that allows, I believe, you to address that. And one of the issues that are missing, for instance, is as Justice Smith brought up, is how many people down the list did we get? Did we actually have a right that was denied this gentleman? And the answer is, we don't know because the record is void of that information. We may know as attorneys who represent the district, the answer is no, but that isn't in the record. So if you look at the court's decision to dismiss the administrative review count, you'll find that it was proper. Because the court found that there was not a final decision or a final action by the board. In that, the courts have held that normally when we deal with a final decision, there's an adversarial process that's in place involving the party's rights, a hearing on the facts, and a decision by an impartial fact finder. Now, plaintiffs would have you believe that the decision of the board to decide to retest was a final decision. But we assume that's true. They failed to comply with the 35-day statute of limitations for filing the administrative review. The letter was sent out to all applicants on the list. The letter is part of the record. Mr. Dulick did receive it and sent a letter saying I'm reserving whatever rights I have, which I don't know what that means exactly. But the point being is eight months after that, the first cause of action was filed in the circuit court of Will County. Thirty-five days is the statute of limitations. If they believe the decision of deciding to retest was the final decision or the administrative decision, 35 days after that date would have been the appropriate time to file it, not eight months after. Now, counsel has cited in their briefs, well, backing up for one moment, it is our position that the decision to do additional testing is in essence the application of their general rules. And if you look at the administrative review statute, specifically 3-101, it excludes general applications, rules, policies of the body as a final decision. So the decision to test, discretionary in nature, is such that it is specifically exempted pursuant to the Administrative Review Act. Now, counsel in their briefs have touched upon that somehow being on an eligibility list equals a property right. Well, it's clear from the case law, the Kramer case that we cite in our brief as well as the U.S. v. the City of Chicago, that there is no vested right to be on a hiring list. The courts have made that clear. There's no gray area. There's no exception to that. But counsel, in an effort to persuade this court, cites to you a case by the name of Caden. But I believe that reliance is misplaced on that. Because that court did not focus on the issues that we have here present today. First off, there was no statute in existence as there is here, arguably, under the Fire Protection District Act. Second, this court focused on the board making a rule to cancel a list, not to add to a list, which I think is an important distinction. By canceling the list, it takes on a different tenure than it does by adding names. Justice Smith brought up the Fire Protection District Act does envision it not to be static. It's dynamic. Because they use the word excluding, things of that nature. And that is consistent with the rules that the board has adopted. I'll touch on it briefly in their argument. They make mention that the board somehow did not properly adopt their rules. And therefore, they didn't have the power to do that. Well, that's trying to have your cake and eat it too. Because if you believe that they had no rules to act the way they act, then not only is the original list void, the second list would be void. And we would have no list at all. The case law is clear. If you fail to adopt rules, you fall back. You still have the power to act under the act. And we cite that. It's a Schenkel case that we cite in our brief as well. So the court probably dismissed the administrative review count. There was no final decision. After getting dismissed on that basis, counsel came back with a writ assertiari seeking to have the case reviewed again. However, a writ assertiari is the same and follows the same standards as administrative review. Therefore, the absence of a final decision in administrative review under the Administrative Review Act, in essence, means you don't have a final decision for purposes of a writ assertiari. And the case of Smith makes it clear that it follows the same standard as administrative review. There was no quasi-judicial proceeding here. There's no record of the lower court, i.e., the district in this case, because there was no proceeding. Even if you choose to look at the request of a writ assertiari, the relief request exceeds that permitted under a writ. The plaintiff seeks the court to impose bad pay, bad seniority. But as this court knows, when you issue a writ, it's either to quash it, quash the writ, which is to affirm the lower proceeding, or to quash the record. Anything that goes beyond that would violate the writ assertiari. And the court dismissed the complaint based on those deficiencies, no final decisions, as well as what was properly going on, being sought in there. Next, they brought a count for mandamus, for failure to – but the court dismissed that for failure to properly plead that within the complaint. Now, mandamus is designed to compel a ministerial or nondiscretionary act. And there's four basic elements. There has to be a clear legal right and duty, a demand and a refusal, the act sought to be compelled must not involve discretion, and the relief sought must be affirmative, not prohibitive. If you look at the pleadings in this case, you will see that there is no clear right. The plaintiff asks in this count that they abolish the list. There is no clear right to abolishing the amended list. They cite no authority for that. And also they fail to address, well, if you believe that Mr. Dubik had a right of being on the list, how do we then, if you believe they had that right, violate the rights of the additional 19 people that were added on the list after retesting? That opens up a whole quagmire of problems. Further, there's no clear duty alleged. Now, they tried to say that there was a demand. They sent this letter after they were given notice that the district was going to retest. But all the letter says is that I'm reserving whatever rights I have, and I'm paraphrasing. But that's basically what it says. There was no demand that you stop doing this testing, a demand that I have a hearing before you, before you. None of that was contained in this letter. And it's clear that absence of a demand that the board has to respond to, they don't satisfy that element. And on mandamus, now, we're dealing with a political body here. It's only designed to compel performance of a clear duty or a ministerial act where the body has refused to perform. We don't have any of that in the record here before this court today. Plaintiffs rely on the case of Lyons. And I believe that's also misplaced. That case dealt with a teacher who had a DCFS investigation ongoing, who was employed as a teacher. There was a finding on one, not a finding on another count. And the court became concerned about the process being imposed and how we're going to deal with this teacher. The case is factually opposite of what we have in our case. Mr. Dubig never had a job with it. It was never a judicial proceeding or a quasi-judicial proceeding. It is clear that that case deals with a different set of facts, circumstances, and law than applies here. Now, the real question in here is does the board decision to test, is that ministerial in nature, is that discretionary? It's clearly discretionary. They have to weigh the needs of the districts, the costs involved with testing. They have to look at the pros and cons of doing so. It's clearly discretionary. There's no ministerial function of deciding to test. Once a decision is made, I believe the statute kicks in and tells you how you have to do it and how the rules and regulations tell you how you have to do it. But the decision to do it is discretionary in nature, and therefore a mandamus cannot lie. In addition, the relief sought was prohibitive. They were looking to strike the 2007 list. And the last attempt to try to convince the court that they had a cause of action or probably put a cause of action is they go after a declaratory judgment claim. Bootstrapped of that was the mandamus count again, but the court dismissed that, saying we've already dealt with that. The facts haven't changed. They haven't put anything different. But on the declaratory judgment, the court found correctly, as our position, that we were too late in the game for use of the declaratory judgment. Because it's well established in Illinois that the purpose of the declaratory judgment action is to address the controversy early on, before there's been a change in anyone's positions, before there's been an irrevocable change. We were a year pending before, over a year pending before, Judge Petrangero in Will County, before the declaratory judgment count was ever filed. I would argue to the court, counsel was serious about filing the declaratory. The right time to do it would have been arguably when they got the letter notifying them that they're going to be retested. That's early on. Nothing had changed. The testing hadn't begun. We're now almost two years past the point of testing, when you first put forth the declaratory judgment count. Now, the goal of the declaratory is to fix and settle rights quickly, before there's been a change. And here, plaintiff is attempting to use declaratory judgment to aid his litigation. That is not the goal of declaratory judgment. Actually, its goal is to avoid extensive and expensive litigation. They sat on that right for well over a year, and has elapsed into time trying to find a way to get this matter before the court, cited in their last brief. If you read the cases they actually rely upon, they support the position that it should be done earlier rather than later. Therefore, based on the standard, which is abusive discretion, are you going to discretion under a declaratory judgment? We don't believe there has been an abusive discretion by the judge. I'm not inclined to address the actual act of the board of combining the list. If your honors wish me to address it, I'm happy to. I believe the law supports it, but I don't think it's properly before you. And there is no record for us really to base any argument on, because we never reached the substance of the act of the district. So, if your honors do not have any questions on that part, I won't belabor it. I don't believe we do. If there's no other questions, then I thank you for your time. Thank you, counsel, for your argument and response. Zinovich, correct? Zinovich, yes. Zinovich, okay. You know, I don't even think I'm saying it right, to be honest with you. I think I'm saying it wrong. My husband doesn't dare to correct me. No. I believe that we've addressed all of these arguments in our reply brief, so I'm just going to make this very brief. We are not saying that the final decision was when they decided to retest. The final decision was when they actually posted that second final eligibility list after they posted the first final eligibility list. Wait a minute. Let me just ask you about this. The counsel for the fire district argues that your time to do something about that decision to retest was within 35 days of the time you got the letter. Saying we're going to retest. If your client says, look, let me put it another way. Do you reckon we'd be here if your client had tested number one on that second list, on that second testing, if you'd have come out number one? Probably not, Mary. Probably not. Okay. But I don't think that's the issue here. So the point is, you're giving yourself, you're giving your client two bites of the apple by saying, I'll retest. I won't complain about the retesting. I won't file within 35 days. I'll retest. If I come out number one, everything's cool. If I come out lower than I was before, then I'll file a lawsuit. I think whatever his intention was in retesting doesn't negate the fact that the district didn't follow the statute. What we are asking the court to do is decide whether or not the district had the power within the statute to do what it did. Did it follow the statutory authority? And we don't believe that they did. And whether or not Mr. Dubik tested and was hoping that he was going to get a better score, that doesn't make a difference. What makes a difference is they went against the statute, they did something that was wrong, and we should now find that they shouldn't have done it. But I do believe that the 35-day rule starts after they posted, or on the date they actually posted the second eligibility list. And the reason why we say that is because he did retest under protest. And at that point, he had no idea whether or not they were going to post another list, whether they were going to consider his protest and say, you know, maybe we shouldn't do this. He didn't know what the final outcome was going to be. He only knew that final outcome when that second eligibility list was posted. That is when he knew that that's what they were going to intend to do was to use that list, and that's when the 35-day rule starts, according to him. I hope you agree with me. But I think our reply groups have already discussed all of these arguments, so I'm not going to go into that again. Again, the only thing we're asking is that the court find or review whether the district acted within its statutory authority. And we don't believe that they did. So unless there are other questions, I think we've addressed everything in our briefs. Thank you very much. Thank you. And congratulations on completing your first argument. Thank you. Very nice. I hope you come back for many more. Thank you. Thank you, counsel, all, for your fine arguments in this matter this morning. You will be taken under advisement. A written disposition shall issue. The court will stand on recess until-